# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| GLENN LIOU, individually and on behalf of all others similarly situated, | ) ) ) | **CLASS ACTION COMPLAINT** |
| Plaintiff, | ) ) | **DEMAND FOR JURY TRIAL** |
| v. | ) ) ) | |
| MULTIPLAN, INC., | ) ) | |
| Defendant. | ) ) ) | |

## CLASS ACTION COMPLAINT

Plaintiff Glenn Liou ("Liou" or "Plaintiff"), individually and on behalf of all others similarly situated, brings this action pursuant to the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* ("TCPA") for violations by MultiPlan, Inc. ("MultiPlan" or "Defendant") and alleges as follows:

### NATURE OF THE ACTION

1.     This case arises from an illegal telemarketing scheme whereby Defendant and their agents advertised the sale of health insurance by placing automated and prerecorded calls to the cellular telephone numbers of consumers such as Liou, in direct violation of the TCPA.

2.     Liou never consented to receive these calls.  Because telemarketing campaigns generally place calls to hundreds of thousands or even millions of potential customers *en masse*, Liou brings this action on behalf of proposed nationwide classes of other persons who received illegal telemarketing calls from or on behalf of the Defendant.

3.     A class action is the best means of obtaining redress for the Defendant's wide scale illegal telemarketing and is consistent both with the private right of action afforded by the TCPA

and the fairness and efficiency goals of Rule 23 of the Federal Rules of Civil Procedure.

## THE PARTIES

4.      Plaintiff Glenn Liou is a resident of New York in this District.

5.      MultiPlan is a corporation organized under the laws of the State of New York, with its principal place of business at 115 5th Ave, 7th Floor, New York NY 10003.

## JURISDICTION AND VENUE

6.      The Court has federal question subject matter jurisdiction over these TCPA claims. *Mims v. Arrow Financial Services, LLC*, 565 U.S. 368 (2012).

7.       The events described herein relate to unlawful telemarketing calls to Liou's cellular telephone number.

8.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claim occurred in this District.

## THE TCPA

9.      In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy [.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

### *The TCPA Prohibits Automated Telemarketing Calls*

10.     The TCPA makes it unlawful to make any telemarketing call using an automatic telephone dialing system to cellular telephone line without express written consent. *See* 47 U.S.C. § 227(b)(1)(A)(iii). The TCPA provides a private cause of action to persons who receive calls in violation of 47 U.S.C. § 227(b)(1)(A). See 47 U.S.C. § 227(b)(3).

11.     According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are

prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.

## DEFENDANT' UNLAWFUL CONDUCT

12.     Liou's telephone number was registered on the national Do Not Call list for more than 30 days prior to the calls at issue.

13.     On August 13, 2019, Liou received a call to his cellular telephone from telephone number (973) 547-6958.

14.     At the outset of the call, Liou heard a prerecorded message regarding quotes for a nationwide PPO plan.

15.     After the prerecorded message concluded, Liou spoke with a representative, who identified themselves as working for "Top Health," who asked Liou if he was interested in receiving a health insurance quote.

16.     After confirming his address and telephone number, Liou was transferred to a second representative who offered Liou a quote for a MultiPlan PPO.

17.     On August 19, 2019, Liou received a call to his cellular telephone from telephone number (773) 337-2692.

18.     At the outset of the call, Liou heard a prerecorded message identifying the caller as Top Health.

19.     After the prerecorded message concluded, Liou spoke to a representative who also provided a quote for a MultiPlan PPO.

20.     On October 21, 2019, Liou received a call to his cellular telephone from telephone number (209) 280-1603.

21.     At the outset of the call, Liou heard a prerecorded message.

22.     After the prerecorded message concluded, Liou spoke to a representative who identified himself as working for Top Health.

23.     Liou was again transferred to a representative who provided a quote for a MultiPlan PPO.

24.     At no time did Liou provide express written consent to MultiPlan, Top Health, or anyone else, to initiate automated telephone solicitations to him.

25.     Liou's experience is not an isolated incident.   To the contrary, consumers throughout the country have voiced identical complaints regarding these telemarketing practices:

> Plague of top health Robocalls from fake numbers all over the US this week I'm getting at least 5 a day on my business phone and like everyone says you can press 9 and they keep calling! Who are these [***]!! They must be stopped!

Jen, September 11, 2019, https://800notes.com/forum/ta-15e679adafb2dc54-2/top-health-robocalls (last visited November 25, 2019).

> I get a dozen of these calls a day! They spoof the caller id so every time they call, it comes from a different number and state. I too have hit 9 and blocked every single number and the calls just keep on coming... about 20 a day, some as close as 5-10 minutes apart.
>
> I have also filed a complaint with the FCC and after submitting it, it just said it would send my complaint to the National Do Not Call registry, which means nothing will change... my number has already been entered in the registry and that has not stopped these robocalls.
>
> I have received over 100 calls from them in the past couple of weeks! Very frustrating!

Lucy, September 11, 2019, https://800notes.com/forum/ta-15e679adafb2dc54/top-health-robocalls (last visited November 25, 2019).

> I've been getting at least ten calls a day from Top Health. It's been happening for several weeks, but has escalated in the last week. It's driving me crazy and this is my business phone. I called the FTC yesterday and have not received a call from Top Health today. We shall see...

Matt, September 13, 2019, https://800notes.com/forum/ta-15e679adafb2dc54-13/top-health-robocalls (last visited November 25, 2019).

26.     These are merely a fraction of the complaints regarding these systematic and ongoing violations of the TCPA.

*MultiPlan's Liability*

27.     Given the sheer number of complaints, MultiPlan knew (or should have known) about these unlawful practices when hiring or accepting telemarketing calls on its behalf.

28.     As one consumer notes:

> Multiplan Inc. uses telemarketers who robocall random individuals to obtain business in violation of the Telephone Consumer Protection Act. I have been referred to Josh at **** **** ************** through one such robocall telemarketer. Multiplan should cease such activities.

NRV, October 2, 2017, https://www.bbb.org/us/ny/new-york/profile/healthcare-management/multiplan-inc-0121-34636/customer-reviews (last visited November 25, 2019).

29.     The Federal Communication Commission has instructed that sellers such as MultiPlan may not avoid liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because "[s]ellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy."

*May 2013 FCC Ruling*, 28 FCC Rcd at 6588 (¶ 37) (internal citations omitted).

30.     In its January 4, 2008 ruling, the FCC likewise held that a company on whose behalf a telephone call is made bears the responsibility for any violations. Id. (specifically recognizing "on behalf of" liability in the context of an autodialed or prerecorded message call sent to a

consumer by a third party on another entity's behalf under 47 U.S.C. § 227(b)).

31.     In fact, for more than twenty years, the FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In re Rules & Regulations Implementing the TCPA*, CC Docket No. 92-90, Memorandum Opinion and Order, 10 FCC Rcd 12391, 12397 (¶ 13) (1995).

32.     On May 9, 2013, the FCC released a Declaratory Ruling holding that a corporation or other entity that contracts out its telephone marketing "may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers."[1]

33.     The May 2013 FCC Ruling held that, even absent evidence of a formal contractual relationship between the seller and the telemarketer, a seller is liable for telemarketing calls if the telemarketer "has apparent (if not actual) authority" to make the calls. 28 FCC Rcd at 6586 (¶ 34).

34.     The FCC has rejected a narrow view of TCPA liability, including the assertion that a seller's liability requires a finding of formal agency and immediate direction and control over the third-party who placed the telemarketing call. *Id.* at 6587  n. 107.

35.     The May 2013 FCC Ruling further clarifies the circumstances under which a telemarketer has apparent authority:

> [A]pparent authority may be supported by evidence that the seller allows the outside sales entity access to information and systems that normally would be within the seller's exclusive control, including: access to detailed information regarding the nature and pricing of the seller's products and services or to the seller's customer information. The ability by the outside sales entity to enter consumer information into the seller's sales or customer systems, as well as the authority to use the seller's trade name, trademark and service mark may also be relevant. It may also be persuasive that the seller approved, wrote or reviewed the outside entity's telemarketing scripts. Finally, a seller would be responsible under the TCPA for the unauthorized conduct of a third-party telemarketer that is

---

[1] *In re Joint Petition Filed by DISH Network, LLC et al. for Declaratory Ruling Concerning the TCPA Rules*, 28 FCC Rcd 6574, 6574 (¶ 1) (2013) ("May 2013 FCC Ruling").

otherwise authorized to market on the seller's behalf if the seller knew (or reasonably should have known) that the telemarketer was violating the TCPA on the seller's behalf and the seller failed to take effective steps within its power to force the telemarketer to cease that conduct.

FCC Rcd at 6592 (¶ 46).

## CLASS ACTION ALLEGATIONS

36.     As authorized by Rule 23 of the Federal Rules of Civil Procedure, Liou brings this action on behalf of a class of all other persons or entities similarly situated throughout the United States.

37.     The classes of persons Liou proposes to represent are tentatively defined as:

**The Prerecorded Call Class**

All persons within the United States to whom  Defendant and/or a third party acting on their behalf, made one or more non-emergency telephone calls to a cellular telephone number through the use of a prerecorded voice within the four years prior to the filing of this Complaint through the date of trial.

**The Do Not Call Class**

All persons within the United States to whom: (a) Defendant and/or a third party acting on their behalf, made at least two telephone solicitation calls during a 12-month period; (b) to a residential telephone number that had been registered with the National Do Not Call Registry more than thirty-one days (c) within the four years prior to the filing of this Complaint through the date of trial.

38.     The Prerecorded Call Phone Class and Do Not Call Class are collectively referred to as "the Classes."

39.     Upon information and belief, the members of the classes received one or more automated calls for telemarketing purposes without having given prior express consent.

40.     Upon information and belief, the members of the class received one or more telemarketing calls that were initiated without transmitting the caller's name and/or without transmitting a valid telephone number

41.     The classes as defined above are identifiable through phone records and phone

number databases.

42.    The potential class members number at least in the thousands, since automated telemarketing campaigns make calls to hundreds or thousands of individuals a day. Individual joinder of these persons is impracticable.

43.    Plaintiff is a member of the Classes.

44.    There are questions of law and fact common to Plaintiff and to the  proposed classes, including but not limited to the following:

> A.   Whether Defendant, or someone on Defendant's behalf, placed calls to cellular telephones using prerecorded messages;
>
> B.   Whether Defendant, or someone on Defendant's behalf, placed calls to telephone numbers listed on the National Do Not Call Registry;
>
> C.   Whether Multiplan is liable for the calls made by the entities calling on its behalf;
>
> D.   Whether Defendant's conduct was knowing and/or willful; and
>
> E.   Whether Defendant's actions constitute a violation of the TCPA.

45.    Plaintiff's claims are typical of the claims of class members. Plaintiff's claims, like the claims of the Classes arise out of the same common course of conduct by Defendant and is based on the same legal and remedial theories.

46.    Plaintiff is an adequate representative of the classes because his interests do not conflict with the interests of the classes, he will fairly and adequately protect the interests of the classes, and he is represented by counsel skilled and experienced in class actions.

47.    Common questions of law and fact predominate over questions affecting only individual class members. The only individual question concerns identification of class members, which will be ascertainable from records maintained by Defendant and/or their agents.

48.    Management of these claims is likely to present significantly fewer difficulties than are presented in many class claims because the calls at issue are all automated. Class treatment is

superior to multiple individual suits or piecemeal litigation because it conserves judicial resources, promotes consistency and efficiency of adjudication, provides a forum for small claimants, and deters illegal activities. There will be no significant difficulty in the management of this case as a class action.

49.    The likelihood that individual members of the classes will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case.

50.    Plaintiff is not aware of any litigation concerning this controversy already commenced by others who meet the criteria for class membership described above.

51.    Defendant has acted and failed to act on grounds generally applicable to Plaintiff and the other members of the Classes, thereby making final injunctive relief and corresponding declaratory relief appropriate with respect to the Classes as a whole. Prosecution of separate actions by individual members of the putative Classes, should they even realize that their rights have been violated, would likely create the risk of inconsistent or varying adjudications with respect to individual members of the Classes that would establish incompatible standards of conduct.

52.    The identity of the Classes are, on information and belief, readily identifiable from the records of Defendant and/or any affiliated marketers, and the National Do Not Call Registry.

## LEGAL CLAIMS

### COUNT I
### Violation of the TCPA's Telemarketing Restrictions
### (On Behalf of the Prerecorded Call Class)

53.     Liou incorporates by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

54.     Defendant, or someone on Defendant's behalf, initiated telemarketing calls to cellular telephone numbers using automatic telephone dialing systems and artificial or prerecorded voices without prior express written consent, in direct violation of  47 U.S.C. § 227(b)(1)(A); 47 C.F.R. § 64.1200(a)(2).

55.     The calls at issue invaded Liou's and the Prerecorded Call Class's legal rights under federal law to be free from such unlawful telemarketing calls, wasted their time and occupied their telephones.

56.     As a matter of law, Liou and the Prerecorded Call Class are entitled to obtain an injunction prohibiting Defendant from committing further violations of 47 CFR § 64.1200(a)(3) and the recovery of the greater of actual damages or $500.00 for each of the violations as prescribed under 47 USC § 227(b)(3).

57.     The automated calls to Liou's and the Prerecorded Call Class's telephone numbers, and the acts and omissions as to those calls described herein were deliberate and conscious acts or omissions.

58.     The automated calls to Liou's and the Prerecorded Call Class's telephone numbers were willful or knowing, as those terms are defined in the Communications Act of 1934 and administered by the FCC. Thus, it is within the Court's discretion to award Liou and the Prerecorded Call Class  up to three times the available statutory damages as prescribed under 47

USC § 227(b)(3).

**COUNT II**
**Violation of the TCPA'S Do Not Call Provisions**
**(On Behalf of the Do Not Call Class)**

59.     Liou incorporates by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

60.     It is a violation of the TCPA for any person or entity to initiate any telephone solicitation to a residential or wireless subscriber who has registered their telephone number with the National Do Not Call Registry.

61.     The FCC's TCPA regulations make it unlawful to "initiate" telemarketing calls to phone numbers registered on the national Do Not Call Registry or without maintaining a list of persons who request not to receive calls. Interpreting the meaning of the word "initiate" in its TCPA regulations, the FCC has clarified that a "person or entity 'initiates' a telephone call when it takes the steps necessary to physically place a telephone call." *In re Dish Network, LLC*, 28 F.C.C. Rcd. 6574, 6582–83 (2013).

62.     The FCC's interpretation of its regulations implementing the TCPA merits substantial deference. *Thomas Jefferson Univ. v. Shalala*, 512 U.S. 504, 512 (1994) (reviewing courts "must give substantial deference to an agency's interpretation of its own regulations"); *see CE Design, Ltd. v. Prism Business Media, Inc.*, 606 F.3d 443, 450 (7th Cir. 2010).

63.     Liou and the members of the Do Not Call Class have received more than one telephone call within a twelve (12) month period in violation of the regulations set forth in 47 C.F.R. 64.1200.

64.     As a result of Defendant's conduct and pursuant to § 227(c)(5) of the TCPA, Liou and the other members of the Do Not Call Class were harmed and are each entitled to $500.00 in

damages for each violation, plus up to treble damages for each violation found to be willful or knowing.

65.     The calls at issue invaded Liou's and the Do Not Call Class's legal rights under federal law to be free from such unlawful telemarketing calls, wasted their time and occupied their telephones.

66.     Liou and the Do Not Call Class are also entitled to an injunction against future calls.

WHEREFORE, Liou respectfully requests that the Court enter an Order providing the following relief:

A.     Certification of the proposed Classes;

B.     Appointment of Liou as representative of the Classes;

C.     Appointment of the undersigned counsel as counsel for the Classes;

D.     A declaration that Defendant and/or their affiliates, agents, and/or other related entities' actions complained of herein violate the TCPA;

E.     An order enjoining Defendant and/or their affiliates, agents, and/or other related entities, as provided by law, from using prerecorded messages;

F.     An award to Liou and the Classes of damages, as allowed by law;

G.     Leave to amend this Complaint to conform to the evidence presented at trial; and

H.     Orders granting such other and further relief as the Court deems necessary, just, and proper.

**Plaintiff requests a jury trial as to all claims of the complaint so triable.**

Respectfully Submitted,

/s/ Keith J. Keogh
KEOGH LAW, LTD.
Keith J. Keogh,
55 W. Monroe St. Ste. 3390

Chicago, IL 60603
(312) 726-1092 / (312) 726-1093
keith@keoghlaw.com

*Attorney for Plaintiff*